UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-20962-DAMIAN

RISHI ARORA,

      Plaintiff,

v.

MIAMI-DADE COUNTY, FLORIDA,

      Defendant.

_____/

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [ECF NO. 26]

**THIS CAUSE** is before the Court on Defendant, Miami-Dade County's ("Defendant" or the "County"), Motion for Summary Judgment [ECF No. 26] ("Motion"), filed February 2, 2024.

THE COURT has considered the Motion, the Response [ECF No. 34] and Reply thereto [ECF No. 36], the pertinent portions of the record, including the parties' respective Statements of Material Facts [ECF Nos. 25, 33, and 37], and the relevant authorities and is otherwise fully advised in the premises. The Court also heard argument from the parties who appeared before the undersigned on July 17, 2024. For the reasons set forth below, this Court grants the Motion.

## I.   BACKGROUND

Plaintiff, Rishi Arora ("Mr. Arora" or "Plaintiff"), filed a Complaint against his current employer, Miami-Dade County, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Florida Civil Rights Act of 1992 ("FCRA"). Mr. Arora

alleges he experienced discrimination and retaliation by his supervisor, Maria Johnson ("Ms. Johnson"), based on his origin, race, and religion.

Based on the parties' briefings and the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.

### A. Mr. Arora's Employment With The County.

Mr. Arora, an Asian American of Indian origin, has been employed as an Enterprise Portfolio Manager in the County's Information Technology Department ("IT Department") since 2015. [ECF No. 25 ("County's SOF"), ¶ 1]. His starting salary was $140,000 annually, and at the time he filed the Complaint, his base salary was $173,458.88. *Id.* ¶ 4–5. In his role as an Enterprise Portfolio Manager in the IT Department, Mr. Arora is involved in improving the consistency, predictability, and efficiency of the organization's project delivery capability by providing leadership in best practices and ensuring that the operational needs of the Enterprise Program Manager Office ("EPMO") are managed, focused on the project interface with project leaders, project teams, technology, sponsors, and stakeholders. *Id.* ¶ 11.

### B. Mr. Arora's Assignment To The Quality Assurance Initiative.

In December 2021, Ms. Johnson directed Mr. Arora to create a presentation for the IT Department Director/CIO, Margaret Brisbane ("Ms. Brisbane"), describing the need for a Quality Assurance function within the IT Department. *Id.* ¶ 19. On February 4, 2022, Mr. Arora presented his research to Ms. Brisbane, Assistant Director Mariaelena Salazar, and Ms. Johnson. *Id.* ¶ 20. As part of his presentation, Mr. Arora highlighted the need for a quality assurance plan within the IT Department. *Id.* On February 15, 2022, after Mr. Arora presented his research, Ms. Johnson assigned Mr. Arora to the Quality Assurance Office Design and Implementation Plan (the "Quality Assurance Initiative"). *Id.* ¶ 21.

According to Ms. Johnson's Declaration, Mr. Arora was chosen to lead the Quality Assurance Initiative because he recommended adding this functionality to the IT Department himself and gathered relevant information on why this functionality would benefit the Department. *Id.* ¶ 22; Johnson Decl. [ECF No. 25-3 ¶¶ 13–14]. For this reason, as well as Mr. Arora's background and experience, Ms. Johnson deemed Mr. Arora was best suited for the assignment. *Id.* Mr. Arora disputes that he was best suited for this assignment because he lacked a background in quality assurance and the proper director level role. [ECF No. 33 ("Arora's SOF") ¶ 22].

As part of the new assignment, Mr. Arora was directed to conduct comprehensive research to provide a design and implementation plan for the Quality Assurance Office. County's SOF ¶ 24. Ms. Johnson advised Mr. Arora that the Quality Assurance Initiative would be his sole focus and that she would assume the day-to-day management of the EPMO in order to allow Mr. Arora to focus on the specialized project. *Id.* ¶ 25. To that end, Ms. Johnson would be responsible for managing Mr. Arora's direct reports until his specialized assignment was completed. *Id.*; [ECF No. 25-2 at 20 (Ms. Johnson's February 15, 2022 email assigning Mr. Arora the Quality Assurance Initiative)].

### C.  *Mr. Arora's 2020-2021 Performance Evaluation By Ms. Johnson.*

Prior to his assignment to the Quality Assurance Initiative, Mr. Arora received an overall "Satisfactory" performance evaluation for the period November 2, 2020 to October 31, 2021. County's SOF ¶ 41; [ECF No. 25-2 at 16–19]. According to the County, Mr. Arora was not entitled to a merit increase for the 2020-2021 performance evaluation period because he was maxed out in his current classification. County's SOF ¶ 42; Arocho Decl. [ECF No. 25-1 at ¶ 10]. Mr. Arora disputes this and claims the County's Human Resources department

has discretionary power to increase an employee's salary notwithstanding their classification status. Arora's SOF ¶ 42.[1]

### D.  Mr. Arora's Record Of Counseling.

On March 30, 2022, after his assignment to the Quality Assurance Initiative, Mr. Arora received a Record of Counseling for his failure to follow directions and failure to meet expectations. County's SOF ¶ 40. Specifically, the Record of Counseling indicates that Mr. Arora failed to discontinue staff meetings with the EMPO staff after Ms. Johnson advised him that she would assume the day-to-day management of the EMPO while Mr. Arora focused on completing the Quality Assurance Initiative. *Id.*; [ECF No. 25-2 at 23].

Mr. Arora disputes the charges in the Record of Counseling. He claims that although Ms. Johnson did advise him that she would be assuming Mr. Arora's role as supervisor of the EPMO and that he should discontinue his "one on one" meetings with staff, she did not say he should stop the scheduled group staff meetings. Arora's SOF ¶ 40. Mr. Arora states that this misunderstanding was later resolved and that he was surprised by the formal record of counseling. *Id.*

### E.  The Initial Charge of Discrimination.

On April 25, 2022, Mr. Arora filed a charge of discrimination with the Equal Employment Opportunity Commission (the "Initial Charge"). County's SOF ¶ 12; [ECF No. 25-2 at 26–27]. In the Initial Charge, Mr. Arora identified the "earliest" date of the alleged

---

[1] Mr. Arora cites his own deposition testimony in support of this assertion. He does not present evidence of the County's policies regarding employee merit increases and pay classification. *See Raney v. Vinson Guard Service, Inc.*, 120 F.3d 1192, 1198 (11th Cir. 1997) ("Summary judgment cannot be avoided . . . based on hunches unsupported with significant probative evidence.").

discrimination as "February 15, 2022" and checked the "continuing action" box. [ECF No. 25-2 at 26].

In the Initial Charge, Mr. Arora claims Ms. Johnson treated him differently as compared to other managers under her supervision because: (1) Mr. Arora was required to meet with Ms. Johnson weekly; (2) Ms. Johnson removed Mr. Arora from his position as Leader of EMPO and assigned him to the Quality Assurance Initiative; (3) Ms. Johnson gave Mr. Arora the "worst performance appraisal ratings" since joining the County; (4) Mr. Arora was verbally threatened by Ms. Johnson; and (5) Mr. Arora received a record of counseling. *Id.* at 27.

### F.  *Mr. Arora's Assignment To The Call Center Initiative.*

Six months after Mr. Arora filed his charge of discrimination, on August 30, 2022, Ms. Johnson assigned Mr. Arora as the IT Department Program Manager for the Call Center Modernization program (the "Call Center Initiative"). County's SOF ¶ 31; Johnson Decl. ¶ 19. She states that she assigned Mr. Arora to this project because of the high-profile nature of the project coupled with Mr. Arora's certifications and experience. *Id.* Ms. Johnson also indicates that she assigned Mr. Arora to the Call Center Initiative due to office needs as an incumbent Program Manager gave notice of her resignation. Johnson Decl. ¶ 20.

As with the Quality Assurance Initiative, Mr. Arora disputes that he was a good fit to lead the Call Center Initiative because he did not have the credentials to give directions to his superiors within the IT Department. Arora's SOF ¶ 31. According to Mr. Arora, Ms. Johnson was setting him up "to fail" when she assigned him to the Call Center Initiative. *Id.* ¶ 35.

Ms. Johnson asserts she was not aware that Mr. Arora had filed a charge of discrimination with the EEOC when she assigned Mr. Arora to lead the Call Center Initiative.

Johnson Decl. ¶ 24. Ms. Johnson states she also was not aware that Mr. Arora had filed a complaint with the Human Fair Employment Practices Division when she assigned him to lead the Call Center Initiative. *Id.* ¶ 25.

### G. *The Supplemental Charge of Discrimination.*

On October 26, 2022, Mr. Arora submitted a supplement to his Initial Charge (the "Supplemental Charge"). [ECF No. 25-2 at 28–29]. Again, Mr. Arora marked "February 15, 2022" as the earliest date the alleged discrimination took place. *Id.*

In the Supplement, Mr. Arora alleges Ms. Johnson retaliated against him since the filing of his Initial Charge when: (1) Ms. Johnson assigned Mr. Arora as lead on a Department initiative despite his concern that only an Assistant Director could lead the initiative; (2) Ms. Johnson failed to restore Mr. Arora to his earlier position once he successfully completed and presented the Quality Assurance Initiative; (3) Ms. Johnson did not restore the reporting by Mr. Arora's direct reports to him; (4) Ms. Johnson barred Mr. Arora from speaking directly with his direct reports; (5) Ms. Johnson told Mr. Arora's direct reports to create EMPO artifacts and he was deliberately kept out of discussions; and (6) Ms. Johnson excluded Mr. Arora from hiring for positions that reported to him. *Id.*

## II.    PROCEDURAL HISTORY

Mr. Arora filed the Complaint in this action on March 10, 2023. [ECF No. 1]. The Complaint asserts eight causes of action: national origin discrimination, in violation of Title VII and the FCRA (Counts I and II); race discrimination, in violation of Title VII and the FCRA (Counts III and IV); religious discrimination, in violation of Title VII and the FCRA (Counts V and VI); and retaliation, in violation of Title VII and the FCRA (Counts VII and VIII). [ECF No. 1].

On February 2, 2024, the County filed the Motion now before the Court seeking judgment as a matter of law on Mr. Arora's discrimination and retaliation claims. [ECF No. 26]. Mr. Arora filed a response arguing that the Motion should be denied [ECF No. 34], and the County filed a reply in support of the Motion. [ECF No. 36].[2]

On March 22, 2024, Mr. Arora's counsel filed a Motion seeking to withdraw from representing Mr. Arora in this action due to irreconcilable differences. [ECF No. 38]. On April 24, 2024, following a status conference on the Motion to Withdraw, this Court granted the Motion and gave Mr. Arora fourteen (14) days in which to either retain new counsel or file a notice of intent to proceed *pro se*. *See* ECF No. 50. Mr. Arora elected to proceed *pro se*. [ECF No. 52].

This Court referred the matter to Magistrate Judge to conduct a settlement conference, *see* ECF No. 60, which resulted in an impasse. [ECF No. 66]. Thereafter, this Court set a hearing on the Motion for Summary Judgment and removed the case from the Court's active trial calendar. *See* ECF No. 72.

On July 17, 2024, this Court heard argument from Mr. Arora, who appeared *pro se*, and from counsel for the County during a two-hour hearing at which Mr. Arora was permitted to present his arguments in opposition to the Motion for Summary Judgment. [ECF No. 74]. Two days later, on July 19, 2024, Mr. Arora filed a *pro se* Motion to Recuse the undersigned from presiding over the instant matter pursuant to 28 U.S.C. § 144 and § 455. [ECF No. 75]. The County filed a response in opposition to the Motion to Recuse [ECF No. 76], and Mr.

---

[2] On March 10, 2024, this case was reassigned to the undersigned for all further proceedings. [ECF No. 35].

Arora filed a reply. [ECF No. 77]. The undersigned denied the Motion to Recuse by separate

Order. *See* ECF No. 78.

The Motion for Summary Judgment is fully briefed and ripe for adjudication.

### III.   LEGAL STANDARD

A party may obtain summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). An issue is genuine if "a reasonable trier of fact could return judgment

for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235,

1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A

fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

(quoting *Anderson*, 477 U.S. at 247–48). The Court views the facts in the light most favorable

to the non-moving party and draws all reasonable inferences in the non-moving party's favor.

*See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "The mere existence of a scintilla of

evidence in support of the plaintiff's position will be insufficient; there must be evidence on

which a jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Further, the

Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140

(11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356

(11th Cir. 1986)).

The moving party shoulders the initial burden of showing the absence of a genuine

issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden

is satisfied, "the nonmoving party 'must do more than simply show that there is some

metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x

819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

## IV.    APPLICABLE LAW

### A.  Title VII And The FCRA.

Title VII prohibits employers from intentionally discriminating against their employees based on "race, color, religion, sex, or national origin." *Lewis v. City of Union City*, 918 F.3d 1213, 1220 (11th Cir. 2019) (quoting 42 U.S.C. § 2000e-2(a)(1)). Title VII also "prohibits employers from retaliating against an employee 'because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge . . . under [Title VII].'" *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1289 (11th Cir. 2021) (quoting 42 U.S.C. § 2000e-3(a)). "To that end, employers cannot retaliate against employees who have complained about— that is, opposed—discrimination" based on sex, age, or other protected characteristics. *Martin v. Fin. Asset Mgmt. Sys., Inc.*, 959 F.3d 1048, 1053 (11th Cir. 2020).

Similarly, under the FCRA, "[i]t is an unlawful employment practice for an employer . . . to discriminate against any individual with respect to compensation, terms, conditions,

or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status." Fla. Stat. § 760.10(1)(a). The FCRA also prohibits retaliation in the same manner as Title VII. *Id.* § 760.10(7); *Mosley v. MeriStar Mgmt. Co.*, LLC, 137 F. App'x 248, 252 (11th Cir. 2005).

"[D]ecisions construing Title VII apply to the analysis of FCRA claims." *Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1325 (11th Cir. 2020) (citing *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387, 1389–90 (11th Cir. 1998)); *Harper*, 139 F.3d at 1387 ("The Florida courts have held that decisions construing Title VII are applicable when considering claims under the [FCRA], because the Florida act was patterned after Title VII."). Indeed, "[n]o Florida court has interpreted the Florida statute to impose substantive liability where Title VII does not." *Harper*, 139 F.3d at 1387. Therefore, the Court analyzes Mr. Arora's Title VII and FCRA claims together.

### B.  *McDonnell Douglas Framework.*

When a Title VII or FCRA discrimination claim is based on circumstantial evidence, the Eleventh Circuit dictates that the three-part *McDonnell Douglas* burden-shifting framework applies. *Johnson*, 948 F.3d at 1325 (citing *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1202 (11th Cir. 2013)); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The Eleventh Circuit applies the same burden-shifting framework to Title VII and FCRA retaliation claims. *Tolar*, 997 F.3d at 1289 (applying *McDonnell Douglas* to Title VII and FCRA claims). Therefore, this Court applies the *McDonnell Douglas* burden-shifting framework to Mr. Arora's Title VII and FCRA discrimination and retaliation claims.

Under this framework, the plaintiff has the initial burden to establish a *prima facie* case of discrimination or retaliation. *McDonnell Douglas*, 411 U.S. at 802. "Demonstrating a *prima*

*facie* case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). If the plaintiff establishes a *prima facie* case by a preponderance of the evidence, a presumption of discrimination arises. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253–54 (1981).

Once the plaintiff has presented a *prima facie* case and its attendant presumption arises, the burden "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas*, 411 U.S. at 802. If the employer meets this burden, "the presumption of discrimination is eliminated and the plaintiff has the opportunity to come forward with evidence . . . sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (quotation omitted). "An employer's stated reason is not a pretext unless it is shown that both: (1) the reason was false; and (2) the real reason was unlawful." *Vega v. Invsco Grp., Ltd.*, 432 F. App'x 867, 871 (11th Cir. 2011) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)). "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." *Chapman*, 229 F.3d at 1024–25.

However, "establishing the elements of the *McDonnell Douglas* framework is not . . . the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). If, despite failing to precisely establish the *McDonnell Douglas* elements, the plaintiff "presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent"—*i.e.*, "a convincing mosaic of circumstantial evidence that would allow a jury to infer

11

intentional discrimination by the decisionmaker"—the plaintiff can still survive summary judgment. *Id.* (quotation and footnote omitted).

## V.    DISCUSSION

### A.  *Mr. Arora's Discrimination Claims.*

Mr. Arora alleges claims of discrimination under Title VII (Counts I, III, and V) and the FCRA (Counts II, IV, and VI) based on his national origin, race, and religion.[3] In the Motion, the County argues that Mr. Arora has not provided direct evidence of discrimination on the part of the County in the form of actions or remarks, and, therefore, Mr. Arora must satisfy the burden shifting framework set forth in *McDonnell Douglas. See Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1228 (11th Cir. 2002).

To establish a *prima facie* case of discrimination under the *McDonnell Douglas* framework, a plaintiff must show that: "(1) plaintiff is a member of a protected class; (2) plaintiff suffered an adverse employment action; (3) the employer treated similarly situated employees outside of the protected class more favorably; and (4) plaintiff was qualified to do the job." *Id.* at 1228 (citing *McDonnell Douglas*, 411 U.S. at 802). The County does not dispute that Mr. Arora has satisfied the first element of a *prima facie* case — that he belongs to a protected class. Mot. at 8. The record reflects Mr. Arora is of Indian nationality and Asian race. *See* Compl. ¶ 4; Resp. at 1. Therefore, the Court turns to the first issue in dispute, whether

---

[3] In his Response to the Motion for Summary Judgment, it appears Mr. Arora has abandoned his discrimination claims based on his religion as there is no mention of such claims. Failure to respond to arguments relating to a claim constitutes abandonment of the claim or position. *Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (plaintiff's failure to either move for summary judgment on claim raised in complaint or to respond to defendant's summary judgment motion on same claim, allowed district court to properly treat claim as abandoned). Therefore, this Court considers the religious discrimination claim as abandoned.

Mr. Arora has demonstrated a genuine issue of material fact as to whether he suffered an adverse employment action.

### 1. **Adverse Employment Actions.**

The County argues Mr. Arora has not demonstrated that he suffered an adverse employment action. Mr. Arora responds that he suffered from the following acts from his direct supervisor, Ms. Johnson, that constitute adverse employment actions: (a) Ms. Johnson micromanaged Mr. Arora during his daily tasks; (b) Ms. Johnson reassigned Mr. Arora to lead the Quality Assurance Initiative, despite Mr. Arora's concerns that he did not have the required experience or certifications and lacked adequate resources to accomplish the initiative; (c) Ms. Johnson removed Mr. Arora's supervisory duties and direct reports; and (d) Ms. Johnson issued Mr. Arora a low rating on his 2020-2021 performance review and a Record of Counseling after Mr. Arora allegedly failed to follow directions provided by Ms. Johnson that he should stop his group staff meetings.[4]

In *Doe v. Dekalb County School District*, 145 F.3d 1441, 1449 (11th Cir. 1988), the Eleventh Circuit adopted an objective test for determining whether an employment action is an actionable adverse action for purposes of discrimination claims:

> A plaintiff must prove that a 'reasonable person in his position would view the employment action in question as adverse.' '[N]ot everything that makes an employee unhappy is an actionable adverse action,' otherwise every trivial personnel action that an irritable chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'

*Ramsay v. Broward Cnty. Sheriff's Off.*, No. 05-61959-CIV, 2007 WL 6861073, at *9 (S.D. Fla. May 24, 2007) (Marra, J.) (quoting *Dekalb County*, 145 F.3d at 1441; *see also Graham v. Florida*

---

[4] Mr. Arora also claims the County's failure to promote him constitutes an adverse employment action. The failure to promote claim is addressed below.

*Dep't of Corr.*, 1 F. Supp. 2d 1445, 1450 (M.D. Fla. 1998) ("Plaintiff's unhappiness with the reassignment does not make the reassignment adverse.").

To establish an adverse employment action, a plaintiff must show "a *serious and material* change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). "Although the [*McDonnell Douglas* test] does not require any direct economic consequences, the employer's action must impact the "terms, conditions, or privileges" of the plaintiff's job in a "real and demonstrable way," and the asserted impact cannot be speculative and must at least have a "tangible adverse effect" on the plaintiff's employment. *Id.* Moreover, "federal courts do not sit as 'super-personnel department[s]' that reexamine an employer's business decisions." *Medearis v. CVS Pharmacy, Inc.*, 646 F. App'x 891, 897 (11th Cir. 2016) (citing *Town of Lake Park*, 245 F.3d at 1244).

Typically, an adverse employment action will "affect continued employment or pay— things like terminations, demotions, suspensions without pay, and pay raises or cuts—as well as other things that are similarly significant standing alone." *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 860 (11th Cir. 2020); *see also Henderson v. City of Birmingham, Ala.*, 826 F. App'x 736, 741 (11th Cir. 2020). Additionally, an adverse employment action extends to actions which fall short of ultimate decisions. *See Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453 (11th Cir. 1998). Therefore, "actions such as undeserved negative job evaluations, demotions, disadvantageous transfers, or toleration of harassment are actionable . . . ." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1283 (11th Cir. 1999).

a.  **Ms. Johnson's Alleged Micromanagement of Mr. Arora's Daily Tasks.**

Mr. Arora claims that Ms. Johnson's increased scrutiny, or micromanagement, of his performance and daily tasks constitutes an adverse employment action. Specifically, Mr. Arora asserts Ms. Johnson refused to approve one of his time sheets because Ms. Johnson claimed he should not receive working credit for any hours during a four-hour time slot Mr. Arora blocked off for a doctor's appointment despite an alleged prior understanding between the two that Mr. Arora was working during part of that time. Resp. at 3. Mr. Arora also argues that Ms. Johnson required Mr. Arora to meet with her every week, and she would attend all of his staff meetings. *Id.* at 4. The County argues that none of these actions constitutes an adverse employment action.

Mr. Arora cites no authority to support the proposition that increased supervision or scrutiny, without more, can constitute an adverse employment action. Indeed, there is substantial authority to the contrary. *See Wells v. Miami-Dade County*, No. 15-22431-Civ, 2016 WL 7492560, at *5 (S.D. Fla. Dec. 30, 2016) (Cooke, J.) (citing *Harris v. Firstar Bank Milwaukee*, 97 F. App'x 662, 665 (7th Cir. 2004) (intimidating comments, dirty looks, and increased scrutiny by supervisors not adverse actions by employer); *Poppy v. City of Wiloughby Hills*, 96 F. App'x 292, 295 (6th Cir. 2004) (supervisor "reviewing [plaintiff's] time sheets, requesting keys to her office to inspect records kept there, or installing a security camera in the hall outside her office" not adverse employment actions); *Kerns v. Capital Graphics, Inc.*, 178 F.3d 1011, 1017 (8th Cir. 1999) (stripping of discretionary authority and moving office closer to supervisor not adverse employment actions).

Additionally, Mr. Arora has not produced any evidence that Ms. Johnson's increased supervision or scrutiny of his daily tasks or of his time sheets actually caused him to suffer

any "tangible adverse effect" on his employment. *See Raney v. Vinson Guard Service, Inc.*, 120 F.3d 1192, 1198 (11th Cir. 1997) ("Summary judgment cannot be avoided . . . based on hunches unsupported with significant probative evidence."); *Merriweather v. Alabama Dep't of Pub. Safety*, 17 F. Supp. 2d 1260, 1275 (M.D. Ala. 1998) (holding that there was no adverse employment action where plaintiff had produced no evidence that she had been fired, demoted, or denied any pay increase because of written counseling).

In short, Mr. Arora's claim that he suffered an adverse employment action with regard to Ms. Johnson's increased supervision and scrutiny of his daily tasks falls far short of serious and material changes in the terms and conditions of employment.

      **b.**  <u>Mr. Arora's Temporary Reassignment and Changes In Duties And Responsibilities</u>**.**

Mr. Arora argues that his temporary assignment to the Quality Assurance Initiative and subsequent changes to his duties and responsibilities constitute adverse employment actions. Specifically, Mr. Arora asserts he was not qualified to lead the Quality Assurance Initiative and struggled to get the necessary resources to succeed with the initiative. Resp. at 5. Despite these concerns, Mr. Arora states "the quality assurance initiative was successfully completed because of [his] efforts and hard work." *Id.* at 7. Additionally, Mr. Arora argues that his loss of supervisory responsibility constitutes an adverse employment action.

Federal courts are reluctant to hold that temporary changes in job duties amount to an adverse employment action when unaccompanied by any tangible harm. *See Town of Lake Park*, 245 F.3d at 1244 (11th Cir. 2001) ("Changes in assignments or work related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work-hour change."); *McGuire v. Miami-Dade County*, 418 F. Supp. 2d 1354, 1360 (S.D. Fla. 2006) (Martinez, J.) ("[I]ncreased workloads are not adverse employment actions

16

but rather an ordinary tribulation of the workplace for which employees should expect to take responsibility."); *accord Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1557 (D.C. Cir. 1997) (agreeing with "other circuits [which] have held that changes in assignments or work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes").

Similarly, courts in the Eleventh Circuit consistently hold that loss of supervisory responsibility does not constitute an adverse employment action without a material change in the terms or conditions of employment. *See Rorie v. Sch. Bd. of Palm Beach Cnty., Fla.*, No. 21-CV-81865, 2024 WL 51008, at *11 (S.D. Fla. Jan. 4, 2024) (Reinhart, J.) (granting summary judgment after plaintiff failed to satisfy his burden to show by an objective standard that the changes to his duties and responsibilities constitute an adverse employment action); *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1203 (11th Cir. 2013) (holding no adverse employment action where plaintiff suffered neither a decrease in pay nor a loss of title—but only a loss of supervisory responsibilities); *see also Hamilton v. Boys & Girls Club of Metro. Atlanta, Inc.*, No. 1:12-CV-3609-TWT, 2014 WL 4100750, at *9 (N.D. Ga. Aug. 18, 2014) (holding plaintiff's reassignment was not an adverse employment action after she failed to demonstrate that she not only lost direct reports but also that any loss of supervisory authority altered the terms and conditions of her employment); *Byrne v. Alabama Alcoholic Beverage Control Bd.*, 635 F. Supp. 2d 1281 (M.D. Ala. 2009) (removal of employee's supervisory responsibilities and shifting of her post-reorganization duties to those more clerical did not constitute adverse employment actions).

The County argues that Mr. Arora did not experience any material change in the terms or conditions of his employment due to his temporary assignment to a specialized project and

17

loss of supervisory responsibility. Mot. at 14. Mr. Arora claims the loss of his supervisory responsibility "combined with removal of job duties within his skill set, and subsequent reassignment to a project completely outside of his knowledge base, significantly and negatively impacted [his] employment." Resp. at 12. Mr. Arora asserts that the County's actions "combined with a lack of support, constant nitpicking, and circular directions, ultimately converged into a poor performance review," which, in turn, prevented him from receiving a pay increase. *Id.* Mr. Arora also claims his psychological well-being was impacted by these changes. *Id.* In support of his discrimination claims, Mr. Arora relies on cases involving hostile or abusive work environment and racial harassment claims. However, Mr. Arora alleges neither hostile work environment nor harassment claims in his Complaint.

Aside from his own testimony,[5] Mr. Arora does not point to any evidence in the record regarding his duties and responsibilities before these alleged changes. He likewise fails to provide evidence or otherwise explain why any alleged changes to his duties and responsibilities had a material effect on his employment or were otherwise sufficiently significant that a reasonable person in his position would view the changes as adverse.

Without evidence regarding Mr. Arora's original responsibilities or how his duties have changed and why the alleged changes resulted in some *material* effect on his employment, it is impossible for the Court to determine whether the alleged changes

---

[5] In the Eleventh Circuit, a party may not avoid summary judgment with conclusory and unsubstantiated assertions. *See Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). The plaintiff, as the non-movant, must point to specific evidence or come forward with additional evidence in the record to avoid summary judgment. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116-17 (11th Cir. 1993). Mr. Arora's self-serving, uncorroborated testimony is insufficient to create a material issue of fact to avoid summary judgment. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999); *see also Tippens v. Celotex Corp.*, 805 F.2d 949, 953-54 (11th Cir. 1986).

constitute adverse employment actions. *See Rorie*, 2024 WL 51008, at *11 (granting summary judgment after plaintiff failed to satisfy his burden to show by an objective standard that the changes to his duties and responsibilities constitutes adverse employment action); *see also Long v. Potter*, No. 04-CV-2888, 2006 WL, 8432674, at *10 (N.D. Ga. Dec. 1, 2006) (finding that Title VII plaintiff failed to point to "sufficient evidence in the record that the reassignment of duties was so undesirable that it constituted a material and significant change in duties or responsibilities"), *report and recommendation adopted*, 2007 WL 9701254 (N.D. Ga. Jan. 26, 2007); *Diaz v. AIG Mktg., Inc.*, 396 F. App'x 664, 667 (11th Cir. 2010) (citing *Town of Lake Park*, 245 F.3d at 1244) ("[C]hanges to an employee's work assignments are rarely sufficiently 'adverse' to warrant scrutiny under the anti-discrimination laws.").

Moreover, "[w]ork assignment claims strike at the very heart of an employer's business judgment and expertise because they challenge an employer's ability to allocate its assets in response to shifting and competing market priorities." *Town of Lake Park*, 245 F.3d at 1244. As the Eleventh Circuit has made clear, "it is by now axiomatic that 'Title VII is not designed to make federal courts sit as a super-personnel department that reexamines an entity's business decisions.'" *Id.* at 1245 (internal quotation marks omitted) (citing *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)).

In sum, Mr. Arora fails to offer any competent evidence demonstrating that the changes to his workplace duties or assignments caused a sufficiently material adverse effect on his employment to constitute a qualifying adverse employment action.

### c. Mr. Arora's Performance Appraisal And Record of Counseling.

Mr. Arora claims his 2020-2021 performance appraisal and formal record of counseling constitute adverse employment actions. Mr. Arora asserts Ms. Johnson gave him

"the worst" performance appraisal that he had ever received during his employment at the County and that it was the first time he did not receive a merit increase. Resp. at 4. According to Mr. Arora, Ms. Johnson failed to acknowledge his major accomplishments, including that a major organization had published Mr. Arora's work. *Id.* Additionally, Mr. Arora claims the County humiliated him by issuing his first ever record of counseling. *Id.* at 7.

The County responds that a performance evaluation – even a negative evaluation – does not constitute an adverse employment action. Reply at 4. The County also argues that a written record of counseling is not an adverse employment action if it does not result in a serious and material change in the terms, conditions, and privileges of employment. *Id.* at 7. In support of this argument, the County points out that Mr. Arora's salary and benefits remained the same and that he was neither fired nor demoted as a result of the record of counseling.

The performance appraisal at issue indicates a "Satisfactory" overall rating for Mr. Arora for the period November 2, 2020 to October 31, 2021. [ECF No. 25-2 at 16–19]. Specifically, Ms. Johnson rated Mr. Arora as "Above Satisfactory" in the categories of "Achievement of Objectives" and "Decision Making and Judgment." *Id.* at 16. For the category regarding "Communications", Ms. Johnson rated Mr. Arora as "Satisfactory" and noted Mr. Arora's "communication style maybe improved by engaging in active listening and being aware of the non-verbal cues from his audience." *Id.* at 17. Although Mr. Arora contends that Ms. Johnson gave him "the worst [performance appraisal] he had received up to that point," Mr. Arora has not produced any evidence that his performance review actually caused him to suffer any tangible loss. *See Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001) ("[T]o prove adverse employment action in a case under Title VII's anti-discrimination

clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment. Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances.").

With regard to Mr. Arora's assertion that Ms. Johnson did not give him a merit increase with the evaluation, the County points to an affidavit provided by the Department's Administrative Services Manager asserting that Mr. Arora was not entitled to a merit increase because Mr. Arora was – and continues to be – maxed out in his current classification. Reply at 5 (citing Declaration of Lylliam Arocho [ECF No. 25-1 ¶ 10 ("Mr. Rishi Arora was not entitled to a merit increase for the performance evaluation period of November 02, 2020 to October 31, 2021. Mr. Arora was – and is – maxed out in his current classification."). Mr. Arora does not present any evidence to dispute this. Thus, it is not clear how he could have been harmed by not getting something he was not entitled to in the first place.

It is well-settled in this Circuit that negative performance reviews and a written record of counseling do not constitute adverse employment actions if they are not used as the basis for any negative action. *See Dixon v. Palm Beach Cnty. Parks & Recreation Dep't*, 343 F. App'x 500, 502 (11th Cir. 2009) (written record of counseling and transfer from bicycle patrol unit did not constitute serious and material change in employment conditions); *McGuire v. Miami-Dade County*, 418 F. Supp. 2d 1354, 1361 (S.D. Fla. 2006) (Martinez, J.) (issuance of a record of counseling without any type of suspension, demotion, or decrease in pay was not an adverse employment action); *Gonzalez v. Fla. Dep't of Highway Safety*, 237 F. Supp. 2d 1338, 1348-49 (S.D. Fla.), *aff'd*, 45 F. App'x 886 (11th Cir. 2002) (a negative performance evaluation which is not used as the basis for any action against a plaintiff does not constitute an adverse

action); *Kavanaugh v. Miami-Dade County*, 775 F. Supp. 2d 1361, 1370 (S.D. Fla. 2011) (Turnoff, J.) (finding record of counseling is not an adverse employment action absent evidence of how it adversely affected the plaintiff). As the County points out, Mr. Arora did not receive a suspension or demotion in connection with the record of counseling, nor was his pay decreased because of it. And, as discussed above, he was not eligible for the merit increase he complains he did not receive.

Because there was no termination of employment, no demotion as evidenced by a decrease in wage or salary, no less distinguished title, no material loss of benefits, no significant diminishing of material responsibilities, and no other indices of materially changed employment terms and conditions, this Court concludes that Mr. Arora has not shown that an adverse employment action occurred based on his record of counseling. *See Spencer v. City of Hollywood, Fla.*, No. 098–60028–CIV, 2009 WL 980274, at *6 (S.D. Fla. Apr. 10, 2009) (Cooke, J.) (finding that a written reprimand did not rise to the level of an adverse employment action because there was no indication that it would dissuade a reasonable worker from making or supporting a charge of discrimination). Notably, none of the actions alleged constrained Mr. Arora's career. *See Dekalb County*, 145 F.3d at 1451 n.18 ("Under an objective standard, an employer can expect that it will not be liable for employment discrimination if it does not constrain its employees' careers.").

Therefore, Mr. Arora's claims relating to his performance appraisal and record of counseling are not adverse employment actions.

### d.  The Alleged Adverse Employment Actions Collectively.

To the extent Mr. Arora argues that the above actions collectively constitute an adverse employment action, that argument fails for the same reason the majority of his individual

allegations fail—that is, there is no evidence that any of the alleged actions had a material impact on his employment such that a reasonable person in his position would view the actions collectively as adverse. *See Dekalb County*, 146 F.3d at 1449 (discussing reasonable person standard in determining whether a plaintiff has suffered an adverse employment action); *Boan v. Fla. Dep't of Corr.*, No. 23-13116, 2024 WL 3084388, at *3 (11th Cir. June 21, 2024) ("[T]he employment action must be materially adverse as viewed by a reasonable person in the circumstances.") (quoting *Town of Lake Park*, 245 F.3d at 1239)).

  **e. <u>Conclusion Regarding The Failure To Allege Adverse Employment Action</u>.**

   Viewing all of the record evidence submitted by the parties in the light most favorable to Mr. Arora, this Court concludes that Mr. Arora has not come forward with evidence sufficient to create a genuine issue of material fact regarding whether he suffered an adverse employment action. To the contrary, the undisputed facts demonstrate that he did not. While he may not be happy with his assignments or reassignments, with the changes in duties, with his one record of counseling, or his less than perfect performance appraisal, under well-established law in this Circuit, such dissatisfaction, without more, does not constitute the serious and material change in the conditions of his employment necessary to rise to the level of an adverse employment action.

   Because Mr. Arora has failed to demonstrate that he suffered an adverse employment action, he has not established a necessary element for his discrimination claims. Therefore, the County is entitled to summary judgment as to Counts I–VI of the Complaint. *See Sloan v. Miami Dade Fire Rescue*, No. 18-21517-Civ, 2019 WL 2869067, at *3 (S.D. Fla. July 3, 2019) (Scola, J.) (citing *Martin v. Eli Lilly & Co.*, 702 F. App'x 952, 956–59 (11th Cir. 2017) (granting

summary judgment on ADA discrimination claim where plaintiff failed to demonstrate that she suffered an adverse employment action)).

In sum, Mr. Arora has not shown he suffered an adverse employment action to prove a violation of Title VII's or the FCRA's discrimination clause. Therefore, this Court need not consider whether Mr. Arora has satisfied the remaining elements necessary to establish a *prima facie* case of discrimination because Mr. Arora's failure to demonstrate that he suffered an adverse employment action is dispositive. *See Cogar v. Citrus Cnty. Sheriff's Off.*, 847 F. App'x 549, 555 (11th Cir. 2021) ("A plaintiff's failure to prove she suffered an adverse employment action is dispositive of an employment discrimination claim.") (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1233 n.39 (11th Cir. 2001)).

Accordingly, the County's Motion for Summary Judgment is due to be granted as to Counts I–VI of the Complaint.

**B.  *Mr. Arora's Failure To Promote Claim Is Time Barred.***

Although he did not assert it in the Complaint as a basis for his discrimination claims, in his Response to the County's Motion for Summary Judgment, Mr. Arora claims the County's decision to promote Ms. Johnson to be Division Director of the EPMO rather than promoting him was also an adverse employment action. Resp. at 2. According to Mr. Arora, Ms. Johnson had only been employed with the County since December 2018 and only had one Bachelor's degree, one MBA degree, and one certification, whereas, Mr. Arora had been with the County since 2015 and had a Bachelor's degree, two MBA degrees, and a total of seven certifications. *Id.*

While the Complaint briefly mentions that Mr. Arora and others applied and were passed over for a promotion to Division Director in March of 2021 (*see* Complaint ¶ 16),

Counts I through VI of the Complaint do not specifically allege the County's failure to promote Mr. Arora as a basis for his discrimination claims.

Even assuming that Mr. Arora intended to set forth a claim of discrimination based on the failure to promote him, any such claim would be time-barred. The only allegation that Mr. Arora makes about being denied a promotion refers to the County allegedly passing him over for the position of Division Director and promoting Ms. Johnson on April 19, 2021. Compl. ¶ 16; Reply at 3. Mr. Arora did not file his charge of discrimination with the EEOC until April 22, 2022. And, as the County points out, Mr. Arora makes no mention of a failure to promote claim in either his Initial or Supplemental Charge filed with the EEOC. Reply at 2.

To timely pursue a Title VII claim, the aggrieved party must file a charge with the EEOC within 180 days of the alleged discriminatory act. 42 U.S.C. § 2000e–5(e)(1). The filing period is extended to 300 days if the aggrieved party first files a complaint with a state agency. § 2000e–5(e)(1). "For a charge to be timely in a deferral state such as Florida, it must be filed within 300 days of the last discriminatory act." *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002). Only those discriminatory practices that occur within the 300–day period prior to the EEOC filing are actionable. *Id.* If a charge is not filed with the EEOC within the time limits prescribed by the statute, the claim is barred. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). Similarly, an employment discrimination claim filed under the Florida Civil Rights Act must be filed within 365 days of the discriminatory act to be actionable. Fla. Stat. § 760.11(1).

Here, Mr. Arora's claim of discrimination based on the failure to promote is time-barred as his charges of discrimination were filed well past the outside limit of 300 days from

the date of the allegedly discriminatory act. Even if Mr. Arora's failure to promote claim was not time barred, his bare allegations of discriminatory failure to promote, without more, are not enough to create a genuine issue of material fact to survive summary judgment. *See Sun v. Girardot*, 237 F. App'x 415, 417 (11th Cir. 2007) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value, and are legally insufficient to defeat summary judgment."). Accordingly, to the extent Mr. Arora intended to assert such a claim, the claim fails as time-barred and unsubstantiated. *See Fuller v. Edward B. Stimpson Co.*, 971 F. Supp. 2d 1146, 1162 (S.D. Fla. 2013), *on reconsideration in part* (Dec. 23, 2013), *aff'd sub nom. Fuller v. Edwin B. Stimpson Co. Inc.*, 598 F. App'x 652 (11th Cir. 2015) (granting summary judgment on plaintiff's failure to promote claim as time-barred).

In sum, Mr. Arora's failure to promote claim is not properly before the Court; and, as noted above, this Court is compelled to find that none of Mr. Arora's other alleged adverse employment actions rise to the level of an adverse employment action covered by Title VII or the FCRA.

### C. *Mr. Arora's Retaliation Claims.*

Mr. Arora also alleges claims for retaliation under Title VII (Count VII) and the FCRA (Count VIII). To establish a *prima facie* case of retaliation under Title VII or the FCRA, a plaintiff must show that: (1) he engaged in a statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was a causal link between the first two elements. *Johnson*, 948 F.3d at 1325 (listing the elements for a Title VII retaliation claim).

As to the first element, statutorily protected expression that may give rise to a Title VII retaliation claim includes filing a discrimination charge with the EEOC, *Thompson v. North America Stainless, LP*, 562 U.S. 170, 173 (2011), and reporting or complaining about alleged

discriminatory practices to superiors. *See Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998); *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994).

Mr. Arora alleges in the Complaint that on October 27, 2021, he told one of his superiors, Mr. Brisbane, "that Ms. Johnson was treating him unfairly and that he felt discriminated against." Compl. ¶ 28. He further alleges that on December 24, 2021, he met with Ms. Brisbane, Ms. Johnson, and an HR manager and "voiced his concerns of discrimination, a toxic work environment, and an unfair review." *Id.* ¶ 33. Mr. Arora then filed his initial EEOC charge on April 25, 2022, and submitted a supplemental charge on October 26, 2022. These allegations are sufficient to satisfy the first element for a retaliation claim under Title VII and the FCRA.

However, although Mr. Arora satisfies the first element, he fails to satisfy the second and third elements. As discussed above, clearly absent from the record available to this Court is any indication of an adverse employment action that Mr. Arora allegedly suffered as a result of his involvement in protected activity. As previously noted, to prove an adverse employment action, "an employee must show a *serious and material change* in the terms, conditions, or privilege of employment." *Town of Lake Park*, 245 F.3d at 1239–40 (emphasis in original).

Mr. Arora argues that the County's refusal to return him to his original EPMO position with supervisory authority constitutes a material change in the terms and conditions of his employment that he suffered as the result of the alleged retaliation. Resp. at 17. However, as discussed above, reassignment of job duties without more does not constitute an adverse employment action. *See Town of Lake Park*, 245 F.3d at 1244 (11th Cir. 2001) ("Changes in assignments or work related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work-hour change.");

27

*Greene v. Loewenstein, Inc.*, 99 F. Supp. 2d 1373, 1382 (S.D. Fla. 2000) (a "purely lateral transfer . . . if not accompanied by any change in position, title, or salary, and that does not require significant retraining or result in loss of prestige or opportunities for promotion is not an adverse employment action").

Mr. Arora has not alleged that he was terminated, demoted, refused a promotion, or reprimanded. Nor does he claim that he suffered any economic loss as the result of the County's or Ms. Johnson's actions. A plaintiff who engages in activity protected by Title VII and suffers an adverse employment action because of it can clearly bring a Title VII retaliation claim—regardless of whether that employee was the target of the discrimination about which he complained. But Mr. Arora has not established that he suffered an adverse employment action on this record, and, as such, his retaliation claim fails. *See Chavarria v. CJA Innovation, LLC*, No. 1:16-cv-20397-UU, 2016 WL 9461328, at *10 (S.D. Fla. Dec. 5, 2016) (Ungaro, J.) (granting summary judgment on Title VII retaliation claim because there was insufficient evidence to create a genuine issue of fact as to any adverse employment action taken by defendant employer).

Because there is no evidence to show an adverse employment action causally related to Mr. Arora's protected expression, his claim of retaliation fails as a matter of law, and the County is entitled to summary judgment as to the retaliation claims asserted in Counts VII and VIII of the Complaint.

## VI.   CONCLUSION

For the reasons laid out above, this Court finds, based upon a thorough review of the evidence in the light most favorable to Mr. Arora and construed liberally, as he is proceeding *pro se*, that Mr. Arora has not alleged facts sufficient to create a genuine issue regarding

whether he suffered an adverse employment action. As such, his discrimination and retaliation claims fail as a matter of law.

Accordingly, it is hereby

**ORDERED AND ADJUDGED** as follows:

1.  Defendant's Motion for Summary Judgment [**ECF No. 26**] is **GRANTED**.

2.  The Court will enter final judgment for the Defendant by separate order.

**DONE AND ORDERED** in Chambers in the Southern District of Florida, this 25th day of September, 2024.

**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**

cc:     Rishi Arora, *Pro Se*
        Counsel of record

29